(text box: 1)
 NO. 5-98-0821

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Bond County.

)

v. )  No. 92-CF-4

)

ROBERT BEN RHOADES, )  Honorable

)  Edward C. Ferguson,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

Robert Ben Rhoades (defendant), pursuant to negotiations with the State, on September 11, 1992, pled guilty to first-degree murder and was sentenced to imprisonment for natural life.  The sentence of death had been a possibility because on May 6, 1992, the State had filed a notice that it intended to seek the death penalty.  This is defendant's third appeal to this court.  Due to the procedural history of this case, this is a direct appeal from defendant's conviction.  On this appeal, defendant initially contended that the circuit court erred in refusing to allow him to file a motion to withdraw his guilty plea, after a remand from this court following defendant's second appeal.  On the motion of defendant, this court allowed defendant to file a supplemental brief that raises the issue of whether the statute under which defendant was sentenced is unconstitutional.  He relies on the United States Supreme Court's decision in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

Prior to the entry of the guilty plea, a hearing was held pursuant to Supreme Court Rule 402 (134 Ill. 2d R. 402(c)).  The parties agreed that to establish a factual basis, the court could take judicial notice of the evidence presented to the grand jury which indicted defendant.
(footnote: 1)  The grand jury heard evidence that the victim, Regina K. Walters, age 14, was last seen alive at her mother's apartment on February 3, 1990, in Pasadena, Texas, and that in April 1990, defendant, an over-the-road truck driver, was arrested in Casa Grande, Arizona, where he was charged with kidnapping and sexual assault.  Defendant had been a suspect in a kidnapping/rape case in which the victim, F.R.T., had been taken from California to Houston, Texas.  F.R.T. had been kept chained up in the back of defendant's truck for a two-week period during which defendant had raped F.R.T.  This victim was able to escape. 

The grand jury also heard evidence that defendant was arrested in Arizona when a state trooper stopped to check on defendant's tractor-trailer, which was parked along the side of a highway, and noticed a nude woman handcuffed and chained to the sleeper of defendant's tractor-trailer.  When the officer shined a light into the truck, the woman started screaming, and defendant got out of the truck.  Regina K. Walters' notebook was found in defendant's truck.

The grand jury heard evidence that a search warrant was issued for defendant's residence in Houston, Texas.  The search produced numerous items of women's clothing, numerous obscene magazines and books, and instruments that could be used in bondage-type situations.  The search also produced photographs of nude women, one of whom was Regina K. Walters.  Some of the clothing that was found resembled the clothing worn by Walters in other photographs found in defendant's apartment.  Other photographs showed Walters in defendant's truck and in front of the barn where her body was found. 

Lastly, the grand jury heard evidence that from the trip logs of defendant's employment, it was determined that he had been on Interstate 70 in Bond County during February or March 1990.  The victim's badly decomposed body was found on September 29, 1990, in a barn along Interstate 70.  It appeared that she had been strangled.  The method of strangulation was described as follows: "A small piece of board inserted through a double wire loop of baling wire, twisted clockwise around the neck of the body."

During the Rule 402 hearing, the court informed defendant that the court could impose a term of natural-life imprisonment without parole if the court decided his actions were exceptionally brutal and heinous indicative of wanton cruelty.

Within 30 days of sentencing, defendant filed a motion to reduce sentence, which was denied after a hearing.  On defendant's first appeal, he contended that because defense counsel did not file a certificate of compliance with Supreme Court Rule 604(d) (145 Ill. 2d R. 604(d)), the cause should be remanded for further proceedings to consider defendant's motion at a hearing after compliance was shown.  This court reversed that portion of the trial court's judgment denying defendant's motion to reduce sentence and remanded the cause for further proceed­ings.  
People v. Rhodes
, 259 Ill. App. 3d 1054, 674 N.E.2d 1284 (1994) (unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23)) (defendant's name was misspelled in the casebooks).

On August 24, 1994, the mandate of this court issued.  On September 21, 1994, the trial court received a letter from defendant in which he wrote that he withdrew his plea of guilty and that his three trial attorneys did not respond to letters mailed to them.  On September 26, 1994, the court appointed Jon Coleman, one of defendant's previous trial attorneys, to represent him on the remand from this court.  The order advised defendant to discuss with his attorney what documents should be filed.  

On October 21, 1994, Coleman filed a motion to withdraw as counsel for defendant, on the basis that defendant accused Coleman of committing error in his prior representation of defendant.

On January 23, 1995, the trial court received another letter from defendant.  Defendant wrote that he had told Coleman that defendant would present evidence in court that he had been coerced to plead guilty by all of his attorneys and by the Bond County sheriff's office.  Defendant also wrote that he had previously fired Coleman as his counsel.  Defendant further wrote, "[I]f a new attorney has been appointed, I wish the court to order them to contact me at once," and "[P]lease acknowledge this letter by return mail, including any pertinent information on my new attorney."

On January 31, 1995, the trial court allowed Coleman to withdraw as counsel for defendant.  The court found that the sentence was the result of plea negotiations binding the court and all parties, that defendant had clearly stated that he did not wish to withdraw his guilty plea but only wanted his sentence reduced, and that, therefore, pursuant to then-recent opinions of this court, counsel need not be appointed when a plea and sentence were fully negotiat­ed.  The trial court denied defendant's motion to reduce sentence without appointing counsel and without conducting a hearing.  On defendant's second appeal, he asked that the cause be again remanded to the trial court because the trial court denied his Rule 604(d) motion without appointing coun­sel.  
People v. Rhoades
, No. 5-95-0084 (February 7, 1996) (unpublished order pursuant to Rule 23) (
Rhoades II
).

This court reversed and remanded pursuant to 
People v. Maltimore
, 161 Ill. 2d 535, 647 N.E.2d 586 (1995) (supervisory order), in which our supreme court vacated our earlier decision in that matter (see 
People v. Maltimore
, 268 Ill. App. 3d 532, 644 N.E.2d 478 (1994)) and remanded the case to the circuit court of Madison County for the filing of a new motion to reduce sentence.  
Rhoades II
, order at 4.  We reasoned, "Under Rule 604(d) a trial court has an obligation to appoint counsel except in situations where a defendant 'affirmatively, knowingly, and intelligently waives appointment of counsel.' "  
Rhoades II
, order at 4-5 (quoting 
People v. Ledbetter
, 174 Ill. App. 3d 234, 238, 528 N.E.2d 375, 378 (1988)).  This court could not find, as the State had argued, that defendant's actions were tantamount to a waiver of counsel.  This court reversed the order of the circuit court of Bond County denying the motion to reduce sentence­, and we remanded the cause to the circuit court in order to determine if defen­dant desired counsel and, if so and if defendant was found to be indigent, for the appoint­ment of counsel and further proceed­ings in strict compliance with Rule 604(d).  
Rhoades II
, order at 5.

On remand, on December 26, 1996, defense counsel filed a motion to withdraw the guilty plea.  Defense counsel also filed a certificate of compliance with Supreme Court Rule 604(d) (145 Ill. 2d R. 604(d)).  The State filed a motion to dismiss alleging that the motion to withdraw the guilty plea was not timely filed and that this court's decision applied only to the previously filed motion to reduce sentence.

On April 24, 1997, defense counsel filed an amended motion to withdraw the guilty plea and/or to reduce sentence.  Defense counsel filed another Rule 604(d) certificate on April 24, 1997.  The court allowed the State's motion to dismiss as it related to the motion to withdraw the guilty plea, on the basis that the motion was not filed within 30 days of sentencing as required by Rule 604(d).  The court stated, however, that the parties would be allowed to present an offer of proof on the motion to withdraw the guilty plea.

On December 4, 1998, a hearing was held on the motion to reduce sentence, and an offer of proof was presented on the motion to withdraw the guilty plea.  The court reiterated its ruling denying the motion to withdraw the guilty plea because the motion was not timely filed.  The court found that the sentence was negotiated in all respects within the range allowed by law, and the court denied the motion to reduce sentence.

On this appeal, defendant contends that the circuit court's interpretation of this court's mandate was incorrect.  Defendant states that the only reasonable reading of this court's mandate is that the trial court must appoint counsel, who then would be allowed to present and address all claims consistent with Rule 604(d), including a motion to withdraw the guilty plea.  

We find that the circuit court's actions on the remand from defendant's second appeal were entirely consistent with this court's mandate.  The circuit court appointed counsel.  Counsel received the court file and the report of proceedings of the guilty plea, and he conferred with defendant concerning his contentions of error.  Counsel performed his duties by raising all the issues counsel found appropriate and by filing an amended motion to withdraw the guilty plea and/or to reduce sentence.  The court ruled on the motion by applying the law applicable at the time the amended motion was presented.  In 
People v. Janes
, 158 Ill. 2d 27, 630 N.E.2d 790 (1994), our supreme court held that a timely filed motion to withdraw guilty plea is a condition precedent to taking an appeal.  Here, defendant timely filed a motion to reduce sentence.  Therefore, the circuit court properly refused to consider the motion to withdraw the guilty plea, which was not filed within 30 days of sentencing.  See 
People v. Feltes
, 258 Ill. App. 3d 314, 316, 629 N.E.2d 1172, 1174 (1994).  As the guilty plea and sentence were fully negotiated, defendant could not attack his sentence without attempting to withdraw his guilty plea in a timely manner.  See 
People v. Evans
, 174 Ill. 2d 320, 673 N.E.2d 244 (1996).  The circuit court correctly read this court's mandate.

Alternately, defendant suggests that the circuit court should have considered his September 19, 1994, letter, indicating that he wanted to withdraw his guilty plea, as an inartfully drawn postconviction petition.  As this contention could have been raised on the second appeal and was not, the issue is waived.  See 
People v. Taylor
, 199 Ill. App. 3d 788, 790, 557 N.E.2d 575, 576-77 (1990).  Further, this suggestion has no merit.

The constitutionality of a statute is a question of law that is reviewed 
de novo
.  
People v. Fisher
, 184 Ill. 2d 441, 448, 705 N.E.2d 67, 71-72 (1998).  Statutes carry a strong presumption of constitutionality.  
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 351, 718 N.E.2d 191, 197 (1999).  A party challenging the constitutionality of a statute bears the burden of rebutting the presumption and clearly establishing a constitutional violation.  
Arangold Corp.
, 187 Ill. 2d at 351, 718 N.E.2d at 197.

Count VIII of the criminal information to which defendant pled guilty alleges that defendant committed first-degree murder "on or about February 3, 1990[,] to March 17, 1990."  At the time of the offense, section 5-8-1(a)(1) of the Unified Code of Corrections provided: 

"Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations: 

(1) for first[-]degree murder, (a) a term shall be not less than 20 years and not more than 60 years, or (b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9-1 of the Criminal Code of 1961 [Ill. Rev. Stat. 1989, ch. 38, par. 9-1] are present, the court may sentence the defendant to a term of natural[-]life imprisonment ***."  Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-1(a)(1)(a), (b). 

Defendant states that the trial court imposed a natural-life sentence on the basis that the offense was exceptionally brutal or heinous indicative of wanton cruelty or was committed in the course of a forcible felony.  Defendant argues that since the count of the criminal information to which he pled guilty did not allege felony murder, the only possible justification for imposing a natural-life sentence would be the exceptionally brutal or heinous nature of the offense.  Defendant concludes that the court did not make the finding that the first-degree murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and that under 
Apprendi
 the court did not have the authority to make that finding, because section 5-8-1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-1(a)) does not require that this factor be proved beyond a reasonable doubt.  In 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), the United States Supreme Court held a New Jersey hate-crime statute unconstitutional because it allowed judges to make a factual finding that enhanced their power to punish beyond the maximum penalties prescribed for a given criminal offense.

In 1994, Charles Apprendi, Jr., took his handgun and fired a spray of .22-caliber bullets into the home of his new neighbors.  Apparently, the newly arrived family did not fit Apprendi’s color criteria for living in a Vineland, New Jersey, neighborhood.  Apprendi was indicted on numerous criminal offenses because of his misconduct, but none of them alleged that his actions were racially motivated.  
Apprendi
, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351.

Apprendi pled guilty to possession of a firearm for an unlawful purpose, an offense for which the New Jersey legislature had provided a 10-year maximum prison sentence.  
Apprendi
, 530 U.S. at 469-70, 147 L. Ed. 2d at 442-43, 120 S. Ct. at 2352.  However, a separate New Jersey hate-crime statute authorized the imposition of greater punishment for any crimes motivated by racial hatred.  The trial judge found that Apprendi’s crime was so motivated and, because of that fact, sentenced Apprendi to a prison sentence greater than the 10-year maximum that could otherwise have been imposed.  
Apprendi
, 530 U.S. at 470, 147 L. Ed. 2d at 443, 120 S. Ct. at 2352.  

The Supreme Court, relying upon constitutional protections of due process, notice, and the right to a trial by jury, struck down the New Jersey hate-crime statute.  
Apprendi
, 530 U.S. at 470, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351.  The Court took an exhaustive look at what our founding fathers promised when they bestowed the right to a trial by jury in all criminal cases.  It found that a part of that promise was the right to have a jury determine all facts necessary to a determination of the maximum punishment the law allows.  The Supreme Court handed down a constitutional-based rule when it stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[] and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

In the instant case, by enforcing the guidelines for accepting a guilty plea, the trial court provided the protections that 
Apprendi
 now ensures.  Before defendant entered his guilty plea, the court informed him of the possibility of a sentence of natural life for the crime to which he pled guilty.  Indeed, the State had previously filed a notice that it intended to seek the death penalty, and the guilty plea avoided that possibility.  The court also made sure there was an adequate factual basis for the plea and that evidence was presented in open court.  See 
People v. Calva
, 256 Ill. App. 3d 865, 873, 628 N.E.2d 856, 862 (1993).

The guilty plea is sufficient proof that defendant was guilty beyond a reasonable doubt.  See 
North Carolina v. Alford
, 400 U.S. 25, 33, 27 L. Ed. 2d 162, 91 S. Ct. 160, 165, (1970).  Defendant's guilty plea was a knowing admission of guilt of the criminal acts charged and all the material facts alleged in the charging instrument.  See 
Davis v. City of Evanston
, 257 Ill. App. 3d 549, 553, 629 N.E.2d 125, 129 (1993).  A guilty plea ends the controversy and removes the prosecution's burden of proof, as it supplies both the evidence and the verdict.  
Boykin v. Alabama
, 395 U.S. 238, 242 n.4, 23 L. Ed. 2d 274, 279 n.4, 89 S. Ct. 1709, 1712 n.4 (1969) (quoting 
Woodard v. State
, 42 Ala. App. 552, 558, 171 So. 2d 462, 469 (1965)).  The reliability of guilty pleas is strengthened by the fact that by pleading guilty a defendant knowingly waives several constitutional rights, including the privilege against self-incrimination and the right to a trial by jury.  
People v. Williams
, 188 Ill. 2d 365, 370, 721 N.E.2d 539, 543 (1999).

As defendant was sentenced according to the statute for the offense to which he knowingly pled guilty, he cannot now claim that his rights were violated per 
Apprendi
. Although 
Apprendi
 itself was an appeal following a guilty plea, the defendant there expressly reserved the right to challenge on appeal the constitutionality of the sentence-enhancement statute.  Apprendi pled guilty to one offense and was then given a sentence exceeding the statutory maximum for that offense.  In this case, defendant was admonished regarding the possible sentence he eventually received.  The possibility of a natural-life sentence for the charge to which defendant pled guilty was clear at the time of the plea, and defendant did not object or raise this issue until his third appeal.  

By pleading guilty, the defendant gives up the right to challenge a sentence within the statutory range for the offense to which he pled guilty.  
People v. Jackson
, 319 Ill. App. 3d  110, 113, 744 N.E.2d 1275, 1278 (2001).  In addressing how 
Apprendi
 affects guilty pleas, the Second District has stated:  

"A defendant who pleads guilty does not have the same appeal rights as one convicted following a trial.  [Citation.]  Generally, after pleading guilty, a defendant may not raise claims of the deprivation of constitutional rights that occurred before the entry of the plea.  [Citation.]  Before defendant entered his plea, the court informed him of the sentencing ranges for the offenses and specifically admonished him of the possibility of consecutive sentences.  Having waived a jury trial on all issues, defendant cannot now claim that he was deprived of the right to have a jury determine the issue of his future dangerousness.  Similarly, he cannot claim that he was unfairly deprived of the right to have the State prove that point beyond a reasonable doubt."  
People v. Chandler
, 321 Ill. App. 3d 292, 297, 748 N.E.2d 685, 690 (2001).

In this case, after receiving a sentence within the range for the offense to which he pled guilty, defendant cannot now claim that his 
Apprendi
 rights were violated.  See 
United States v. Johnstone
, 251 F.3d 281 (1st Cir. 2001) (a guilty plea gives the court the discretion to impose the statutory maximum sentence because the defendant is informed of that possible sentence).

Finding that an 
Apprendi
 violation did not occur in this case is consistent with our prior interpretation of 
Apprendi
.  In 
People v. Nitz
, this court called into question the validity of section 5-8-1(a).  
People v. Nitz
, 319 Ill. App. 3d 949, 968, 747 N.E.2d 38, 55 (2001).  This court reduced the defendant's sentence from natural life to 60 years' imprisonment.  However, we made clear that our difficulty with the application of the statute was that it violated the defendant's right to a trial by a jury.  
Nitz
, 319 Ill. App. 3d at 968, 747 N.E.2d at 55.  In this case, defendant's right to a trial by a jury was not violated.  Defendant waived this right.  Defendant should not be able to waive a right, receive a sentence he subjected himself to, and then contend that the right was violated.    

For the foregoing reasons, the judgment of the circuit court of Bond County is affirmed.

Affirmed.

CHAPMAN, P.J., and HOPKINS, J., concur.

                                      NO. 5-98-0821

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Bond County.

)

v. )  No. 92-CF-4

)

ROBERT BEN RHOADES, )  Honorable

)  Edward C. Ferguson,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: July 13, 2001

___________________________________________________________________________________

Justices
: Honorable Richard P. Goldenhersh, J.

Honorable Charles W. Chapman, P.J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________________

Attorneys
 Daniel M. Kirwan, Deputy Defender, Paige Clark Strawn, Assistant Defender, Office

for
 of the State Appellate Defender, Fifth Judicial District, Route 15 East, P.O. Box

Appellant
 2430, Mt. Vernon, IL 62864-0047

___________________________________________________________________________________

Attorneys
 Hon. John Knight, State's Attorney, Bond County Courthouse, Greenville, IL 62246;

for
 Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Gerry R. Arnold,

Appellee
 Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Route 15 East,

P.O. Box 2249, Mt. Vernon, IL 62864

___________________________________________________________________________________

FOOTNOTES
1:
A grand jury returned a seven-count indictment charging defendant with murder.  On July 2, 1992, criminal informations were filed that were virtually identical to the indictments with the exception that first-degree murder was charged. 

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 07/13/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.